STATE OF NEBRASKA, APPELLEE, V. CHARLES McCLELLAND, APPELLANT.

233 N. W. 2d 786

Filed October 16, 1975. Nos. 39953, 39954.

J. William Gallup, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, and CLINTON, JJ., and KUNS, Retired District Judge.

NEWTON, J.

The defendant was charged in two cases with first degree murder and plead guilty on December 22, 1948,

to two charges of second degree murder. He received two life sentences. In this post conviction proceeding he asserts that the guilty pleas were induced by fraudulent representations, were not supported by corroborative evidence, and that evidence favorable to him was suppressed. The defendant was at all times represented by competent counsel. We affirm the judgment of the District Court.

Examination of the voluminous record supports the judgment of the trial court. The defendant gave several confessions of guilt to the county attorney. The earlier confessions contained statements which sometimes varied from the known facts, but in a letter later written to the Attorney General on June 15, 1949, he admitted guilt and stated that he had given "several wild stories." In any event, his later confessions did agree with the known facts. The defendant attempts to explain this situation by saying he was innocent but amended his statements as he learned the facts from the officers involved. There is nothing in the record to corroborate his evidence in this respect.

In addition to the confessions given the authorities, the record discloses numerous letters written by defendant to relatives, friends, and others, both before and after his conviction, admitting guilt. It appears that defendant was determined to plead guilty as one of his attorneys testified that he would not cooperate with his attorneys but did with the county attorney. In one instance he indicated to his attorneys that he had an alibi. This was thoroughly investigated and eventually found to be nonexistent. Also, in one letter he subsequently admitted that his alibi story was false.

A bullet was found in one of the victims which was too badly deformed to permit positive identification of its caliber but it was the opinion of F.B.I. experts that it was a .41 caliber bullet from an old style rimfire shell not using smokeless powder and possibly fired from a derringer. Similar shells were found in defendant's

possession but the gun used was never recovered. A witness was available who had laundered defendant's clothing soon after the killings and was positive there was blood on them. Defendant's jacket, obtained at the time of his arrest sometime after the murders, was ascertained to have human blood on it but due to the passage of time, it could not be type-matched with the victims. Two witnesses were available who placed defendant in the general area on the day of the crime. Finger and palm-prints in the victims' automobile did not match defendant's. A lock of hair found caught in a ring of one of the victims did not match the color of defendant's hair. The evidence is conflicting as to whether the defense attorneys were aware of all these facts but it is clear that they knew about the lock of hair, the falsity of the alibi, and that the prosecution had a bullet and a blood-stained jacket. Whether they had knowledge of the prints in the automobile, or evidence placing defendant in the area at the time of the crime, is disputed. However, the defense attorney who testified said the defendant convinced him of his guilt; told him that he had an accomplice with blond hair such as was found in the victim's ring; and that defendant insisted on pleading guilty. Similar corroborative statements regarding the hair and an accomplice is present in other statements and letters of the defendant. The deputy county attorney in charge of the investigation testified that the State's entire file on the case was made available to the principal defense attorney.

The evidence is such that the trial court may well and reasonably could have found that defendant and his attorneys were in no way deluded as to the nature of the evidence against the defendant, the voluntariness of his pleas, or his guilt. In fact, a defense attorney stated the pleas were voluntary and that he was convinced of defendant's guilt.

In a post conviction proceeding the petitioner has the burden of establishing a basis for relief. See State v.

Fusby, 188 Neb. 139, 195 N. W. 2d 495. "The findings of the trial court on conflicting evidence will not be disturbed on appeal unless clearly wrong." Prudential Ins. Co. v. Holliday, 191 Neb. 144, 214 N. W. 2d 273.

The record discloses that the defendant's guilt is clear and that his pleas were voluntarily entered at his own insistence. His contention that he was deceived, threatened, and that evidence was suppressed is not established. We find that the judgment of the District Court should be affirmed.

AFFIRMED.